UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>JOHN MICHAEL VAZQUEZ<br>UNITED STATES DISTRICT<br>JUDGE | FRANK R. LAUTENBERG<br>POST OFFICE AND<br>COURTHOUSE<br>2 FEDERAL SQUARE,<br>ROOM 417<br>NEWARK, NJ 07102<br>973-297-4851 |

June 29, 2016

VIA ECF

## LETTER OPINION AND ORDER

    Re:    **Gerald Horney v. Carolyn W. Colvin, Acting Commissioner of Social Security**
              **Civil Action No. 15-00176**

Dear Litigants:

      Plaintiff Gerald Horney ("Plaintiff") appeals the final decision of the Commissioner of Social Security ("Commissioner"), which denied his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons that follow, the Court finds that the Commissioner's decision was supported by substantial evidence and affirms.

      Pursuant to the Social Security Act (the "Act"), Plaintiff filed a Title II application for DIB and a Title XVI application for SSI. Plaintiff alleged disability beginning August 16, 2006, stemming from a work accident on that day. For purposes of DIB, not SSI, Plaintiff's date of last insured was December 31, 2011, meaning Plaintiff has to prove that he was disabled on or before that date. Following a hearing, an Administrative Law Judge ("ALJ") issued a partially favorable decision on November 15, 2010. The ALJ found that that Plaintiff became disabled on November 1, 2008 rather than the earlier date claimed by Plaintiff. Plaintiff appealed the decision to the Appeals Council of the Social Security Administration, arguing that the ALJ should have found Plaintiff disabled as a result of a work accident on August 16, 2006. In doing so, the Appeals Council was free to review the entire matter, including the portion finding in favor of Plaintiff.[1]

---

[1] *See* 20 C.F.R. § 404.979 (indicating that the Appeals Council may adopt, modify, or reject the ALJ's determination). In the Appeals Notice, Plaintiff was warned that the Appeals Council would consider his entire case "even the part with which you agree[,]" or which Plaintiff found to be "favorable[.]"

On September 12, 2012, the Appeals Council vacated the ALJ's November 15, 2010 decision and remanded the matter. Tr. 181-83.[2] The ALJ had relied in part on the testimony of medical expert Martin Fechner, M.D. The Appeals Council determined that the basis for Dr. Fechner's opinion concerning Plaintiff's residual functional capacity was "unclear." *Id.* at 181. The Council instructed the ALJ on remand to update the record through any additional relevant evidence, evaluate Plaintiff's obesity, evaluate Plaintiff's subjective complaints, further consider Plaintiff's residual functional capacity during the entire period, and obtain vocational expert testimony if warranted. *Id.* at 182-83.

On remand, another ALJ ordered an updated medical consultative examination. *Id.* at 11, 615-26. A new hearing was scheduled for Plaintiff on December 6, 2012, but Plaintiff did not appear. *Id.* at 103-04, 306, 505. Another hearing was eventually held on February 20, 2013. *Id.* at 99-171. Plaintiff and a vocational expert testified.[3]

The ALJ rendered his decision on March 25, 2013, finding that Plaintiff was not disabled. *Id.* at 11. The ALJ noted that he had asked Plaintiff for information from treating sources from 2006 and 2007. *Id.* at 11. The ALJ kept the record open for some time after the hearing so that Plaintiff could submit the information, but Plaintiff never did. *Id.*[4] The ALJ also sent a subpoena to the hospital where Plaintiff indicated he went following the August 16, 2006 accident, but the hospital replied that they had no records of Plaintiff. *Id.*

The ALJ then performed the five-step evaluation process required by the regulations. *Id.* at 11–21. The ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, left knee impairments, arthritis of the right ankle and foot, and obesity. *Id.* at 13. Plaintiff also suffered from the following non-severe impairments: hypertension, diabetes, and a left shoulder injury. *Id.* At step three of the analysis, the ALJ concluded the none of the severe impairments, standing alone or in conjunction, met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 14.

---

[2] The entire record on appeal can be found at D.E. 6 and 6-1 through 6-7. For the convenience of the parties, the Court refers to the record citation as "Tr." and refers the numbering on the bottom right corner of each page.

[3] During the hearing, Plaintiff's counsel made inappropriate remarks to the ALJ. For example, he twice told the ALJ how things worked in "real court" as opposed to the manner in which the ALJ was administering the hearing. Tr. at 141. Counsel continued, "I'm saving Your Honor the embarrassment of being remanded[.]" *Id.* This Court does not consider Plaintiff's counsel inappropriate remarks to the ALJ in reaching its decision. However, as a member of the bar, counsel should have treated the ALJ with professionalism and respect. This Court fails to see how these gratuitous comments benefited counsel's client, Plaintiff. Moreover, nothing in the transcript reveals that the ALJ made any remarks that would have justified counsel's comments.

[4] During the hearing, Plaintiff's counsel indicated that he would produce the medical records within a week. Tr. at 118.

The ALJ next determined Plaintiff's residual functional capacity ("RFC"), concluding that Plaintiff could perform a full range of sedentary work. *Id.* In doing so, the ALJ reviewed the medical evidence concerning Plaintiff's foot, ankle, left knee, back, and neck. *Id.* at 15–21. The ALJ noted that there was no proof of ongoing medical treatment between the date of the alleged disability, August 16, 2006, and November 2007. *Id.* at 15. In addition, Plaintiff's counsel indicated that he would provide physician records for the time period but failed to do so and the hospital where Plaintiff claimed to have been immediately treated also had no record of him. *Id.* Moreover, at the time of the hearing, Plaintiff was only seeing a primary care physician and declined additional surgical consultations for his foot and left knee. *Id.* at 15-16. For example, Plaintiff had arthroscopic surgery on his left knee in July 2011 but did not follow-up on an additional surgical referral. *Id.* at 16. The ALJ also discussed the consultative examinations performed in 2008 and 2012 on Plaintiff and explained why he gave more credence to the 2008 report. *Id.* at 19. Although a vocational expert testified at the hearing, the ALJ did not rely upon either the hypothetical scenarios or the vocational expert's responsive testimony concerning available jobs in reaching his opinion.

Plaintiff appealed the ALJ's March 25, 2013 decision to the Appeals Council. On November 13, 2014, the Appeals Council denied Plaintiff's request for review, making the ALJ's opinion the final decision of the Commissioner. This appeal followed.

On appeal, Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence. D.E. 12 at 18. In support, Plaintiff notes that two independent medical examiners – Dr. Fechner and Alexander Hoffman, M.D. (who performed the consultative examination in 2012) – made findings inconsistent with the ALJ's determination of RFC. *Id.* at 11-13. Plaintiff also refers to medical evidence concerning Plaintiff's back, knee, and ankle and indicates that the ALJ also failed to properly account for the impact that Plaintiff's obesity had on such ailments. *Id.* at 20-26. Plaintiff adds that the ALJ did not properly review Plaintiff's subjective complaints. *Id.* at 27-31. Plaintiff further claims that the Commissioner erred because the ALJ did not rely on the vocational expert's testimony even though the ALJ presented the expert with hypotheticals concerning Plaintiff's RFC and elicited appropriate responses. *Id.* at 14-17. Plaintiff requests that the Commissioner's decision be reversed and that he be awarded disability benefits. *Id.* at 31-33.

The Commissioner responds that Plaintiff was not disabled under the Act during the relevant period for DIB (December 31, 2011, Plaintiff's date of last insured) or the relevant period for SSI (March 25, 2013, the date of the ALJ's opinion, which became the final decision of the Commissioner when the Appeal Council later denied review). D.E. 13 at 11. The Commissioner further asserts that the ALJ's decision concerning Plaintiff's RFC was supported by substantial evidence. *Id.* at 17. The Commissioner notes that Plaintiff's testimony as to key events and facts was inconsistent and Plaintiff failed to seek proper treatment for his ailments. *Id.* at 6-7, 9.

In reviewing a final decision of the Commissioner, the Court exercises plenary review over legal issues. *Matthews v. Apfel*, 239 F.3d 589, 591 (3d Cir. 2001). An ALJ's findings, including credibility determinations, must be upheld if they are supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)

3

(citation and internal quotation marks omitted). Such evidence is less than a preponderance but more than a mere scintilla. *Id.* The Court reviews the record as a whole to determine whether an ALJ's finding is supported by substantial evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citation omitted).

There was substantial evidence to support the Commissioner's decision in light of Plaintiff's failure to follow-up with appropriate treatment, Plaintiff's credibility issues, and the competing medical evidence. First, treatments or methods used to alleviate symptoms are indicators of intensity and persistence of symptoms. 20 CFR § 404.1529(c)(3) (2016). The Commissioner can consider a claimant's failure to follow recommended treatment while also evaluating whether a claimant has a valid reason in not doing so. In the Third Circuit, generally "a claimant's mild treatment regimen or failure to seek further treatment may be substantial evidence that the claimant's symptoms were not severe," however, "the Third Circuit and the Social Security Administration have both warned that an ALJ must explicitly consider any alternate explanations the claimant may provide for the claimant's failure to seek treatment." *McClease v. Comm'r of Soc. Sec.*, No. CIV.A.08-1673, 2009 WL 3497775, at *12 (E.D. Pa. Oct. 28, 2009) (citing *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 547 (3d Cir. 2003)). As a result, courts have ruled that failure to treat, absent a legitimate reason, undermines a claimant's contentions concerning the severity or persistence of symptoms. *See Nieves v. Comm'r of Soc. Sec.*, No. 12-3998 SRC, 2013 WL 3772673, at *6 (D.N.J. July 17, 2013) (ruling that it was reasonable for the ALJ to find that Plaintiff had not carried his burden of proof of disability because the plaintiff did not offer an explanation for why he did not obtain treatment for an allegedly disabling condition over a seven-year period); *Posko v. Astrue*, 756 F. Supp. 2d 607, 612 (D. Del. 2010) ("The ALJ, however, considered that Plaintiff's failure to be treated by any doctor since April 2007 for his knee, back and neck pain and limitations supports the finding that they were not completely disabling."); *Scott v. Astrue*, No. 07-6033, 2010 WL 892197, at *9 (D.N.J. Mar. 8, 2010) ("Despite Scott's allegations regarding her numerous seizures, her failure to treat her seizure disorder during the relevant period as well as her inconsistent statements concerning the use of illicit drugs undermines her credibility.").

In this matter, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effect of his symptoms were "not entirely credible" for, among other reasons, Plaintiff's failure to seek and receive proper treatment. Tr. at 18. The ALJ noted that there were no continuous treatment records for Plaintiff since the date of the alleged accident in August 2006 until November 2007 – a gap in time of 15 months. *Id.* at 11, 15. Moreover, as to Plaintiff's back, the ALJ observed that Plaintiff's "treatment course has only been sporadic or conservative; at present, he admitted that he is only seeing one primary care provider." *Id.* at 19. Both of these findings by the ALJ were verified by the medical records. Moreover, no records from the primary care physician were ever submitted. Plaintiff also failed to follow-up on an additional physician referral for his left knee after arthroscopic surgery in July 2011. *Id.* at 633-34. When asked by the ALJ as to whether Plaintiff was seeing any other doctors besides his primary care physician, Plaintiff responded, "Not as of right now. I was advised by . . . my Workmen's Comp attorney to wait until after we go to Court to see the other doctors because it might interfere with the case[.]" This Court offers no opinion as to the soundness of the workers' compensation attorney's advice, but the record supports the ALJ's finding that Plaintiff's failure to treat was inconsistent with his claims concerning persistence and severity. Moreover, failure to

4

treat in order to receive a better result in another legal matter has not been recognized as a valid excuse.

The ALJ's determination concerning Plaintiff's credibility was also supported by other substantial evidence. For example, as to Plaintiff's left shoulder, he claimed that he injured it in the August 6, 2016, accident. However, Plaintiff informed a physician in November 2010 that he injured his shoulder five weeks earlier when he was helping his brother move furniture and felt a "pop." Tr. at 642. This statement not only contradicts Plaintiff's contentions concerning his shoulder, but it also undermines his claims concerning the severity of his back, knee, and ankle ailments. Plaintiff was helping his brother move furniture in 2010.

Plaintiff also contradicted himself as to how he came to use a cane. In 2010, he told an ALJ that he began using the cane because his mother had one at home. *Id.* at 38. However, he told a consultative examiner in 2012 that a doctor had prescribed it after the August 2006 accident. *Id.* at 615. He repeated the same thing to the ALJ in 2013. *Id.* at 122. Also, in 2010, Plaintiff testified that he could stand for 15 to 20 minutes at a time and for 3 or 4 hours during an 8-hour work day. *Id.* at 39. He added that he could sit for 2 hours during a work day and that he could walk for potentially up to 3 hours. *Id.* at 40-41. However, during the 2013 hearing, Plaintiff indicated that after the accident, he could sit for "[m]aybe three to four minutes at a time." *Id.* at 121. He also indicated that as of 2013, he could only stand for "[t]hree to four minutes as a time." *Id.* at 122. Yet, Plaintiff confirmed that there were no "other accidents or any other mishaps" between his August 2006 accident and the 2013 hearing, which could have possibly accounted for these changes. *Id.* at 125.

Plaintiff complains that the ALJ did not refer to Dr. Fechner's 2010 medical opinion in reaching his decision. However, as noted, the Appeals Council in vacating and remanding the matter concluded that the basis for Dr. Fechner's opinion was "unclear." Plaintiff also argues that the ALJ should have accepted the 2012 consultative examination as opposed to the 2008 consultative examination. However, some of the 2012 findings were clearly not supported by the record. For example, although Plaintiff had "good grip strength in both hands," the doctor found that Plaintiff could never use his hands. *Id.* at 616, 622. Moreover, Plaintiff offers no compelling reason as to why the ALJ was bound to accept the 2012 report over the 2008 report.

Finally, Plaintiff asserts that the ALJ should have at least limited Plaintiff's RFC consistent with the hypotheticals provided to the vocational expert during the hearing. The Court observes that the better practice would have been for the ALJ to explain why he was not adopting the hypothetical limitations when determining Plaintiff's RFC. However, any error in this regard was harmless, because even with those limitations, the vocational expert testified that available work existed in significant numbers in both the national and local economy. *Id.* at 127-28.[5]

---

[5] During the 2013 hearing, Plaintiff's counsel argued that the vocational expert did not "know what he's talking about." Tr. at 140. Counsel further claimed that he would "prove" that the vocational expert was "making up" his testimony. *Id.* at 142. However, other than his own questions, counsel offered no independent evidence to support, much less prove, his contentions.

For the foregoing reasons, the Commissioner's final decision was supported by substantial evidence.

The Court **AFFIRMS** the Commissioner's final decision.

**SO ORDERED.**


      s/ John Michael Vazquez
      _____
      **JOHN MICHAEL VAZQUEZ**
      **UNITED STATES DISTRICT JUDGE**